IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and LOUISVILLE METRO AIR POLLUTION CONTROL DISTRICT, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 3:20-cv-00542-CRS |
| v. | ) ) | |
| LOUISVILLE GAS & ELECTRIC COMPANY, | ) ) ) | **CONSENT DECREE** |
| Defendant. | ) | |

# TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ........................................................................... 3
II.     APPLICABILITY ............................................................................................. 3
III.    DEFINITIONS .................................................................................................. 4
IV.    CIVIL PENALTY ............................................................................................. 7
V.      COMPLIANCE REQUIREMENTS ............................................................... 9
VI.    PERMITS ........................................................................................................ 13
VII.   PROHIBITION ON NETTING CREDITS OR OFFSETS FROM REQUIRED
CONTROLS ................................................................................................................. 14
VIII.   SUPPLEMENTAL ENVIRONMENTAL PROJECT ................................... 15
IX.    REPORTING REQUIREMENTS ................................................................... 18
X.      STIPULATED PENALTIES .......................................................................... 21
XI.    FORCE MAJEURE ........................................................................................ 26
XII.   DISPUTE RESOLUTION .............................................................................. 28
XIII.   INFORMATION COLLECTION AND RETENTION ................................... 31
XIV.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ....................... 32
XV.    COSTS ............................................................................................................ 34
XVI.   NOTICES ....................................................................................................... 34
XVII.   EFFECTIVE DATE ....................................................................................... 35
XVIII. RETENTION OF JURISDICTION ............................................................... 36
XIX.   MODIFICATION ........................................................................................... 36
XX.    TERMINATION ............................................................................................. 36
XXI.   PUBLIC PARTICIPATION .......................................................................... 37
XXII.   SIGNATORIES/SERVICE ............................................................................ 38
XXIII. INTEGRATION ............................................................................................. 39
XXIV. FINAL JUDGMENT ..................................................................................... 39
XXV.   HEADINGS ................................................................................................... 39
XXVI. 26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION ......................... 39
XXVII. APPENDIX ................................................................................................... 40
APPENDIX A .............................................................................................................. 45

WHEREAS, Plaintiff, United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and Plaintiff, Louisville Metro Air Pollution Control District ("District"), by and through its attorneys, filed a Complaint in this action on July 31, 2020, and an Amended Complaint ("Complaint") on December 18, 2020, seeking injunctive relief and civil penalties for the United States pursuant to Section 113(b)(2) of the Clean Air Act ("CAA" or "Act"), 42 U.S.C. § 7413(b), and for the District pursuant to KRS §§ 77.235 and 77.990, alleging that Defendant, Louisville Gas and Electric Company ("LG&E"), violated the Act, 42 U.S.C. §§ 7401 to 7671q, and/or implementing regulations including federally-approved District regulations incorporated into the Jefferson County portion of the Kentucky State Implementation Plan ("Jefferson County SIP").

WHEREAS, Defendant owns and operates a coal-fired electricity generating power plant known as Mill Creek Station at 14460 Dixie Highway, Louisville, Kentucky.  The Facility consists of four electricity generating units, known as Units 1, 2, 3, and 4, with a combined rated capacity of 15,399 MMBtu/hr.  Defendant completed installation in 2014-2016 of enhanced air quality control systems at the Facility that have substantially reduced emissions of sulfuric acid mist ("SAM") and other pollutants at all four Units.

WHEREAS, EPA issued a Notice of Violation ("NOV") to LG&E dated June 30, 2016, pursuant to Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1), alleging that Defendant's failure to install and operate controls necessary to control the emission of SAM at the Facility violated District regulations in the federally enforceable Jefferson County SIP, including Regulations 1.01, 1.05, and 1.09, and Defendant's permit issued under Subchapter V of the Act, 42 U.S.C. §§ 7661-766lf.

WHEREAS, the Complaint alleges that Defendant failed to install and operate controls

1

that were necessary to control the emission of SAM, and were required by District regulations in the federally enforceable Jefferson County SIP and Defendant's permit issued under Subchapter V of the Act, 42 U.S.C. §§ 7661-766lf.

WHEREAS, Defendant has denied and continues to deny the violations alleged in the Complaint and the NOV and denies that it is liable for civil penalties, injunctive or other relief, and nothing herein shall constitute an admission of liability.

WHEREAS, Defendant has agreed to implement a Supplemental Environmental Project that involves substantially reducing and minimizing engine idling of ten heavy-duty diesel bucket trucks during electric line maintenance and construction by replacing them with electric power take-off equipped bucket trucks.

WHEREAS, the Parties intend the environmental benefit of the Supplemental Environmental Project to be concentrated, and it is an objective of this Consent Decree to concentrate such benefits, in communities with potential environmental justice concerns in and around Jefferson County, Kentucky.

WHEREAS, the Parties have agreed, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and at arm's length; that this settlement is fair, reasonable, and in the public interest and is consistent with the goals of the Act and the Jefferson County SIP; and that entry of this Consent Decree without further litigation is the most appropriate means of resolving this matter.

NOW, THEREFORE, with the consent of the Parties and without any admission or adjudication of the violations alleged in the Complaint or the NOV, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

# I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367 and Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and over the Parties. Venue lies in this District pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because the violations alleged in the Complaint are alleged to have occurred in, and Defendant does business and is found in, this judicial district. Solely for purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant, and consents to venue in this judicial district.

# II. APPLICABILITY

2. The obligations of this Consent Decree apply to and are binding upon the United States and the District, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

3. No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented. At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA and DOJ, in accordance with Section XVI (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

4. Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree,

as well as to any contractor or consultant retained to perform any work required under this Consent Decree. Notwithstanding any retention of contractors, subcontractors, or agents to perform any work required under the Consent Decree, Defendant shall be responsible for ensuring that all work is performed in accordance with the requirements of this Consent Decree.

5. In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree, unless Defendant establishes that such failure resulted from a force majeure event, as defined in Section XI (Force Majeure) of this Consent Decree.

## III. DEFINITIONS

6. Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

a. "CAA" or "Act" means the federal Clean Air Act, 42 U.S.C. §§ 7401–7671q, and its implementing regulations;

b. "Consent Decree" or "Decree" means this Consent Decree, including Appendix A;

c. "Date of Entry" means the date this Consent Decree is signed or otherwise approved in writing by the United States District Court Judge;

d. "Date of Lodging" means the date this Consent Decree is lodged by filing with the Clerk of Court for the United States District Court for the Western District of Kentucky;

e.    "Day" means a calendar day unless expressly stated to be a business day. In computing any period of time for a deadline under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day;

f.    "Defendant" means Louisville Gas and Electric Company (LG&E);

g.    "District" means the Louisville Metro Air Pollution Control District;

h.    "DOJ" means the United States Department of Justice and any of its successor departments or agencies;

i.    "Effective Date" means the definition provided in Section XVII (Effective Date);

j.    "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies;

k.    "Facility" means Defendant's Mill Creek Station power plant located in Louisville, Kentucky;

l.    "Jefferson County SIP" means the portion of the State Implementation Plan for the Commonwealth of Kentucky that is applicable only to Jefferson County, Kentucky;

m.    "$O_2$" means dioxygen, the common allotrope of the chemical element oxygen;

n.    "Paragraph" means a portion of this Decree identified by an Arabic numeral, including subparagraphs thereof (Subparagraph) identified by lower case English letters;

o.    "Parties" means the United States, the District, and Defendant;

p. "Plaintiff(s)" means the United States, including the EPA and the United States Department of Justice, and the District;

q. "ppmvd" means parts per million volumetric dry;

r. "qualifying e-PTO equipped bucket truck" means a vehicle as defined in Paragraph 2 of Appendix A;

s. "SAM" means sulfuric acid mist or $H_2SO_4$;

t. "SAM Emission Rate(s)" means the parts per million volumetric dry (ppmvd) at 3% $O_2$ of SAM, measured in accordance with Section V.B. of this Consent Decree;

u. "SCR" means a selective catalytic reduction device, which is a pollution control device that employs selective catalytic reduction technology for the reduction of nitrogen oxides;

v. "Section" means a portion of this Decree identified by a Roman numeral;

w. "$SO_2$" means sulfur dioxide;

x. "Stack Test" shall mean:

(1) For Units 3 and 4, a SAM compliance test performed at the stack for the relevant Unit in accordance with the compliance demonstration methodology set forth in Section V.B. of this Consent Decree.

(2) For Units 1 and 2, a SAM compliance test performed at the combined stack in accordance with the compliance demonstration methodology set forth in Section V.B. of this Consent Decree because the Units share a wet flue gas desulfurization system.

y. "Sulfuric Acid Mitigation System" means a sulfuric acid control system including the use of pulse jet fabric filters and the injection of a reagent into the flue gas stream to react with the acid gases and reduce the outlet SAM emissions;

z. "Unit" means, for the purposes of this Consent Decree, one of the four coal-fired electric generating units at the Facility;

aa. "United States" means the United States of America, acting on behalf of EPA.

## IV. CIVIL PENALTY

7. Within 30 Days after the Effective Date, Defendant shall pay the sum of $750,000 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging. Defendant shall pay 50 percent of the total civil penalty plus interest to the United States and 50 percent of the total civil penalty plus interest to the District.

8. Defendant shall pay the portion of the civil penalty due to the United States by FedWire Electronic Funds Transfer ("EFT") to the DOJ account, in accordance with instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Western District of Kentucky after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

Carrie Beatty
LG&E and KU Energy
220 West Main Street
Louisville, KY 40202
Carrie.Beatty@lge-ku.com

on behalf of Defendant.  Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to DOJ and EPA in accordance with Section XVI (Notices).

9.	At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to DOJ via email or regular mail in accordance with Section XVI (Notices); and (iii) to EPA in accordance with Section XVI (Notices).  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States and Louisville Metro Air Pollution Control District v. Louisville Gas and Electric Co.* and shall reference the civil action number, CDCS Number and DOJ case number 90-5-2-1-11357.

10.	Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section X (Stipulated Penalties) in calculating its federal or State or local income tax.

11.	Defendant shall pay the portion of the penalty owed to the District by FedWire Electronic Funds Transfer ("EFT") to the District account, in accordance with instructions provided to Defendant by the District after the Effective Date.  The District will provide the payment instructions to:

> Carrie Beatty
> LG&E and KU Energy
> 220 West Main Street
> Louisville, KY 40202
> Carrie.Beatty@lge-ku.com

on behalf of Defendant.  Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to the District in accordance with Section XVI (Notices).

12.    At the time of payment, Defendant shall send notice that payment has been made to the District via mail in accordance with Section XVI (Notices).

## V.    COMPLIANCE REQUIREMENTS

A.  <u>SAM Emission Limits</u>

13.    For the duration of this Consent Decree, Defendant shall comply with the following SAM Emission Rates set forth in this subparagraph:

a.    Mill Creek Station Unit 1: Defendant shall achieve and maintain compliance with a SAM Emission Rate of 4.0 ppmvd at 3% $O_2$, which would increase to 5.0 ppmvd at 3% $O_2$ if Defendant installs an SCR on Unit 1.

b.    Mill Creek Station Unit 2: Defendant shall achieve and maintain compliance with a SAM Emission Rate of 4.0 ppmvd at 3% $O_2$, which would increase to 5.0 ppmvd at 3% $O_2$ if Defendant installs an SCR on Unit 2.

c.    Mill Creek Station Units 3 and 4: Defendant shall achieve and maintain compliance with a SAM Emission Rate of 5.0 ppmvd at 3% $O_2$ for Units 3 and 4.

14.    Defendant shall demonstrate compliance with each SAM Emission Rate through the use of Stack Tests conducted in accordance with Subsection B below.

B. <u>Sulfuric Acid Stack Testing Requirements</u>

15.    Within 180 Days after the Date of Entry of this Consent Decree and in each calendar year thereafter, LG&E shall conduct a Stack Test for SAM on each Unit at the Facility, except that the Stack Test for Units 1 and 2 will be performed at the combined stack because the Units share a wet flue gas desulfurization system.  Such Stack Tests shall be performed at 90% or higher of maximum capacity, or allowable/permitted capacity, or at a level of capacity which results in the greatest emissions and is representative of the operations.  All Stack Tests shall be

conducted while the SCR is operating (if the unit has an SCR installed) with a setpoint at 85% NOx removal.

16.     In conducting each Stack Test, Defendant shall use the reference methods and procedures specified in 40 C.F.R. Part 60, Appendix A-4, EPA Conditional Test Method (CTM) 013.  If Defendant seeks to use an alternative reference method or procedure, then within sixty (60) Days prior to conducting such Stack Test, Defendant shall submit the requested alternative protocol to the District for review and approval, with a copy to EPA.

17.     The results of each Stack Test shall be reported in ppmvd at 3% $O_2$ in terms of SAM. The Stack Test will consist of three separate runs each performed under the applicable protocol. The reagent injection rate shall also be reported with the results of each test. Defendant shall calculate the SAM Emissions Rate from the Stack Test results in accordance with 40 C.F.R. § 60.8(f). The results of each Stack Test shall be submitted to the District and EPA within sixty (60) Days of completion of each test.

    C.   Compliance Assurance Monitoring

18.     Defendant will implement continuous compliance assurance for the SAM Emission Rates through parametric monitoring in accordance with a Compliance Assurance Monitoring plan submitted pursuant to the Compliance Assurance Monitoring ("CAM") regulations, 40 C.F.R. Part 64, and as approved by the District as set forth in Paragraph 19 of this Consent Decree.

19.     Within 60 Days of submittal of the initial Stack Test results as required under Paragraph 17 of this Consent Decree, Defendant shall submit a District permit application pursuant to District Regulation 2.03, *Authorization to Construct or Operate; Demolition/Renovation Notices and Permit Requirements,* to the District for review and approval

with a copy sent to EPA contemporaneously with the submittal to District, to incorporate the

SAM Emission Rates and other requirements in this Section V (Compliance Requirements) and

any pertinent and relevant definition in this Consent Decree. The application shall include a

revised CAM plan that includes the monitoring parameters indicating compliance with the SAM

Emission Rates.

      a.    As part of the preparation of the CAM plan, Defendant shall develop a

Sulfuric Acid Mitigation System reagent injection compliance curve for each Unit that

corresponds to the reagent injection rates utilized during the applicable initial compliant

Stack Test. Defendant will include in the CAM plan use of the reagent injection rate

(based on the averaging period specified in the CAM plan) that corresponds to the

operating load on the reagent injection compliance curve as the primary indicator of

performance of the Sulfuric Acid Mitigation System for each Unit.

      b.    Defendant will include in the CAM plan use of continuously monitored

$SO_2$ emissions as a secondary indicator parameter, because sulfuric acid formation, and

thus SAM emissions, can be correlated to $SO_2$ emissions.

20.    Following issuance of a District permit that includes the CAM plan, Defendant

shall monitor the parameters identified in the preceding Paragraph for each Unit at all times it is

in operation for comparison to the applicable performance indicators determined in the CAM

plan.

      a.    Any deviation from the applicable CAM-determined performance

indicators shall be addressed through compliance with the response protocols set forth in

the CAM plan. Such a deviation shall not be considered a violation subject to stipulated

penalties under this Consent Decree, notwithstanding any language in Section X

(Stipulated Penalties).

        b.       Any deviations from the CAM plan shall be subject to the applicable reporting requirements of Section IX (Reporting Requirements) of this Consent Decree.

21.      If any of the events listed below in this Paragraph 21.a. or 21.b. occur at any Unit, Defendant shall conduct a Stack Test at that Unit within sixty (60) Days after it completes the relevant change at that Unit, and revise the performance indicators for that Unit, including the Sulfuric Acid Mitigation System reagent injection compliance curve, consistent with the most recent compliant Stack Test data. Such revision shall be undertaken consistent with protocols to be established in the CAM Plan and shall not require a revision to the Facility's Title V permit.

        a.       The monthly average sulfur content of fuel burned at any Unit calculated at the end of any calendar month is greater than 20% above the highest sulfur content used at that Unit during the most recent Stack Test; or

        b.       To the extent that Defendant reasonably expects any of the following changes to remain in effect for more than 60 Days;

            (1)      The material replacement, or change in design, of the Sulfuric Acid Mitigation System at any Unit.

            (2)      A change in the type of fuel used at any Unit to a fuel not permitted for use at that Unit prior to the Date of Entry of this Consent Decree.

            (3)      A change in the type of sorbent material used for SAM emission control at any Unit.

            (4)      Any other change that Defendant would reasonably expect to result in an increase in the SAM emissions rate prior to adjustment of

control parameters.

D. <u>Recordkeeping</u>

22.     Defendant shall maintain a daily log of the sorbent injection rates and other relevant operating data, including date, average daily unit load (MWg), operating hours for each Day, sorbent injection location, sorbent injection flow rate (gallons per minute and tons per hour), and sorbent injection density (if injecting liquid sorbent).

## VI.     PERMITS

23.     Where any compliance obligation under this Consent Decree requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendant may seek relief under the provisions of Section XI (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals. Defendant shall provide notice to EPA and the District pursuant to Section XVI (Notices) that Defendant has submitted an application for the Facility for any permit described in this Paragraph.

24.     Notwithstanding the reference to Title V permits in this Consent Decree, the enforcement of such permits shall be in accordance with their own terms and the Act. The Title V permits shall not be enforceable under this Consent Decree, although any term or limit or requirement established by or under this Consent Decree shall be enforceable under this Consent Decree regardless of whether such term has or will become part of a Title V permit, subject to the terms of Section XX (Termination) of this Consent Decree.

25. Defendant shall provide EPA with a copy of each application to amend its Title V permit for the Facility, as well as a copy of any permit proposed as a result of such application, to allow for timely participation in any public comment opportunity.

26. In accordance with Paragraph 19, within 60 Days of submittal of the initial Stack Test results as required under Paragraph 17 of this Consent Decree, Defendant shall submit an application and all necessary information to the District to permanently include the requirements and limitations enumerated in Section V (Compliance Requirements) of this Consent Decree and any pertinent and relevant definition in this Consent Decree into a federally-enforceable permit (other than a Title V operating permit), such that the requirements and limitations enumerated in Section V (Compliance Requirements) of this Consent Decree and any pertinent and relevant definition in this Consent Decree become and remain "applicable requirements" as that term is defined in 40 C.F.R. Part 70.2 and these requirements shall survive the termination of this Consent Decree in accordance with Section XX (Termination) in the form of a federally-enforceable permit (other than a Title V operating permit). Defendant will, within 60 Days of submittal of the initial Stack Test results as required under Paragraph 17 of this Consent Decree, submit an application and all necessary information to incorporate the requirements and limitations enumerated in Section V (Compliance Requirements) of this Consent Decree and any pertinent and relevant definition in this Consent Decree into its Title V operating permit.

27. The Consent Decree shall not terminate before Defendant has obtained a Title V Permit for the Facility that incorporates the requirements identified in the preceding Paragraph.

## VII.    PROHIBITION ON NETTING CREDITS OR OFFSETS FROM REQUIRED CONTROLS

28.     Emission reductions that result from actions to be taken by Defendant after the Effective Date of this Consent Decree to comply with the requirements of this Consent Decree shall not be considered as a creditable contemporaneous decrease for the purpose of obtaining a netting credit or offset under the CAA's Nonattainment New Source Review ("NSR") and Prevention of Significant Deterioration ("PSD") Programs.

29.     The limitations on the generation and use of netting credits and offsets set forth in the previous Paragraph do not apply to emissions reductions achieved at Units 1, 2, 3, or 4 at the Facility that are greater than those required for that particular Unit under this Consent Decree. For purposes of this Paragraph, emission reductions at Facility Unit 1, Unit 2, Unit 3, and/or Unit 4 are greater than those required under this Consent Decree if they result from such Unit's compliance with federally-enforceable emission limits that are more stringent than those limits imposed on such Unit under this Consent Decree and under applicable provisions of the Clean Air Act or the Jefferson County SIP.

## VIII.   SUPPLEMENTAL ENVIRONMENTAL PROJECT

30.     Defendant shall implement a Supplemental Environmental Project ("SEP") that involves integrating ten (10) qualifying electric power take-off ("e-PTO") equipped bucket trucks into its service fleet ("e-PTO Diesel SEP"), installing at least one charging station for those trucks, and adequately training its employees, staff, and necessary contractors regarding those trucks.  Implementation of this SEP by Defendant will substantially reduce and minimize engine idling during electricity line maintenance and construction by the ten e-PTO equipped trucks through the use of battery-operated e-PTO technology. The SEP shall be completed in accordance with this Decree and Appendix A.

31.     Defendant is responsible for the satisfactory completion of the SEP in accordance with the requirements of this Decree.  "Satisfactory completion" means completion of the schedule set forth in Paragraph 6 of Appendix A and ultimate integration of the ten (10) qualifying e-PTO equipped bucket trucks into Defendant's service fleet.

32.     With regard to the SEP, Defendant certifies the truth and accuracy of each of the following:

       a.     that all cost information provided to EPA in connection with EPA's approval of the SEP is complete and accurate and that Defendant in good faith estimates that the cost to implement the SEP, exclusive of administrative expenses and legal fees, is $540,000;

       b.     that, as of the date of executing this Decree, Defendant is not required to perform or develop the SEP by any federal, state, or local law or regulation and is not required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum;

       c.     that the SEP is not a project that Defendant was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Decree;

       d.     that Defendant has not received and will not receive credit for the SEP in any other enforcement action; and

       e.     that Defendant will not receive any reimbursement for any portion of the SEP from any other person.

33.     Defendant certifies under penalty of perjury that it would have agreed to perform a comparably valued, alternative project other than a diesel emissions reduction Supplemental

Environmental Project if EPA were precluded by law from accepting a diesel emissions reduction Supplemental Environmental Project.

34.     As part of the semi-annual reporting under Section IX (Reporting Requirements) of this Consent Decree, Defendant shall submit a status report that shall include a discussion of Defendant's progress in satisfying its obligations in connection with the e-PTO Diesel SEP as described in this Section and Appendix A. The status report shall include, at a minimum, a narrative description of activities undertaken and a summary of costs incurred since the previous report.

35.     <u>SEP Completion Report</u>.  Defendant shall submit a SEP Completion Report to DOJ, EPA and the District, in accordance with Section XVI (Notices).  The SEP Completion Report shall contain the following information:

      a.     a detailed description of the SEP as implemented;

      b.     a description of any problems encountered in completing the SEP and the solutions thereto;

      c.     an itemized list of all eligible SEP costs expended;

      d.     certification that the SEP has been fully implemented pursuant to the provisions of this Decree; and

      e.     a description of the environmental and public health benefits resulting from implementation of the SEP (with a quantification of the benefits and pollutant reductions, if feasible).

36.     EPA may, in its sole discretion, require information in addition to that described in the preceding Paragraph, in order to evaluate Defendant's completion report.

37.     After receiving the SEP Completion Report, the United States will notify

Defendant whether or not Defendant has satisfactorily completed the SEP.  If Defendant has not

satisfactorily completed the SEP in accordance with this Consent Decree, stipulated penalties

may be assessed under Section X.  Disputes concerning the satisfactory completion of the SEP

will be resolved under Section XII (Dispute Resolution).

38.     Each submission required under this Section shall be signed by an official with

knowledge of the SEP and shall bear the certification language set forth in Paragraph 43.

39.     Any public statement, oral or written, in print, film, or other media, made by

Defendant making reference to the SEP under this Decree shall include the following language:

"This project was undertaken in connection with the settlement of an enforcement action, *United

States and Louisville Metro Air Pollution Control District v. Louisville Gas and Electric

Company*, taken on behalf of the U.S. Environmental Protection Agency and the Louisville

Metro Air Pollution Control District under the Clean Air Act."

40.     For federal income tax purposes, Defendant agrees that it will neither capitalize

into inventory or basis nor deduct any costs or expenditures incurred in performing the SEP.

## IX.     REPORTING REQUIREMENTS

41.     Defendant shall submit the following reports to EPA, DOJ, and the District at the

addresses set forth in Section XVI (Notices):

a.     By July 31st and January 31st of each year beginning 60 Days after the

Effective Date of this Consent Decree, until termination of this Decree pursuant to

Section XX (Termination), Defendant shall submit in both electronic and hard copy a

semi-annual report for the preceding six months that includes the status of completion of

the SEP, consistent with Paragraph 34; the status of compliance with Section V

(Compliance Requirements); problems encountered or anticipated, together with implemented or proposed solutions; the status of permit applications required to be submitted under the Consent Decree, including development of a CAM plan; and a copy of any reports that were submitted only to the District and that pertain to compliance with this Consent Decree.

b.      In any report submitted pursuant to this Section, Defendant may incorporate by reference information previously submitted under its Title V permitting requirements, provided that Defendant attaches the Title V permit report (or the pertinent portions of such report) and provides a specific reference (by page number, section number, paragraph number, or other specific identifying marker) to the provisions of the Title V permit report that are responsive to the information required in the periodic report.

c.      The report shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify DOJ, EPA, and the District of such violation and its likely duration, in writing, within fifteen business days of the Day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of

the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section XI (Force Majeure).

42. Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA by telephone at David Lloyd's number: (404) 562-9216 or by email to Lloyd.David@epa.gov and the District by telephone number (502) 574-6000 to the Compliance and Enforcement Manager as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

43. Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

44. This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

45. The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

46.     Subject to Paragraph 81, any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## X.     STIPULATED PENALTIES

47.     Defendant shall be liable for stipulated penalties to the United States and the District for violations of this Consent Decree as specified below, unless excused under Section XI (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

48.     Late Payment of Civil Penalty.  The following stipulated penalties shall accrue per violation per Day for each violation of a requirement of Section IV (Civil Penalties):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $5,000 | 1st through 14th Day |
| $7,500 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

49.     SAM Emission Limits.  The following stipulated penalties shall accrue per violation per Day for each violation of a SAM Emission Rate set forth in Section V.A based on the results of a Stack Test performed pursuant to Section V.B. or Section V.C.:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $5,000 | 1st through 14th Day |
| $7,500 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

50.     Permits. The following stipulated penalties shall accrue per violation per Day for each violation of any requirement in Section VI (Permits) of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $1,500 | 15th through 30th Day |
| $2,500 | 31st Day and beyond |

51.     Reporting Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section IX (Reporting Requirements):

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $1,500 | 15th through 30th Day |
| $2,500 | 31st Day and beyond |

52.     CAM Plan Submission.  The following stipulated penalties shall accrue per violation per Day for each violation of the requirement to timely submit a CAM plan as required in Paragraph 19:

| Penalty Per Violation Per Day | Period of Noncompliance |
|:---:|:---:|
| $1,000 | 1st through 14th Day |
| $1,500 | 15th through 30th Day |
| $2,500 | 31st Day and beyond |

53.     Transfer of Ownership.  If Defendant fails to: (a) provide a copy of this Consent Decree to any proposed transferee; (b) provide written notice to the United States at least 30 Days prior to any transfer of any portion of the Facility; or (c) provide to EPA an executed copy of the written agreement with the transferee, as required by Paragraph 3, the following stipulated penalties shall accrue: $5,000 per occurrence.

54.     SEP Compliance

        a.     If Defendant fails to comply with the requirements to submit a SEP Completion Report or the obligations in Paragraph 6 of Appendix A for implementing the SEP, Defendant shall pay stipulated penalties for each failure to meet an applicable deadline, as follows:

| Penalty Per Violation Per Day | Period of Noncompliance |
|:---:|:---:|
| $1,000 | 1st through 14th Day |
| $2,500 | 15th through 30th Day |
| $5,000 | 31st Day and beyond |

        b.     If Defendant fails to implement the SEP, or halts or abandons work on the SEP, Defendant shall pay a stipulated penalty of $656,250, less $50,085 for each qualifying e-PTO Diesel Truck that it incorporates into its fleet pursuant to Section VIII (Supplemental Environmental Project) and Appendix A.  The penalty under this Subparagraph shall accrue as of the date performance ceases.   If Defendant fails to implement the SEP, or halts or abandons work on the SEP, Defendant shall pay the

stipulated penalty in Paragraph 54.a. or Paragraph 54.b., whichever is greater, but shall not pay both stipulated penalties for that same violation.

55.     Subject to the specific exception from stipulated penalties identified in Paragraph 20.a., if Defendant fails to comply with any requirement of this Consent Decree not specifically addressed in Paragraphs 47-54 above, Defendant shall pay a stipulated penalty of $1,000 per Day for each Day that any such requirement is not fulfilled.

56.     Except as provided in Subparagraph 54.b., stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

57.     Defendant shall pay stipulated penalties to the United States and the District within 30 Days of a written demand by either Plaintiff.  The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.  Defendant shall pay 50 percent of the total stipulated penalty amount due to the United States and 50 percent to the District, unless Defendant elects within twenty (20) Days of receipt of written demand for stipulated penalties from a Plaintiff to dispute the obligation to pay or the accrual of stipulated penalties in accordance with the provisions in Section XII (Dispute Resolution) of this Consent Decree.

58.      Either Plaintiff may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

59.     Stipulated penalties shall continue to accrue as provided in Paragraph 56, during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement of the Parties or by a decision of

EPA or the District pursuant to Section XII (Dispute Resolution) that is not appealed to

the Court, Defendant shall pay accrued penalties determined to be owing, together with

interest at the rate specified in 28 U.S.C. § 1961, to the United States and/or the District

within 30 Days of the effective date of the agreement or the receipt of EPA's or the

District's decision or order.

b.     If the dispute is appealed to the Court and the United States or the District

prevails in whole or in part, Defendant shall pay all accrued penalties determined by the

Court to be owing, together with interest at the rate specified in 28 U.S.C. § 1961, within

60 Days of receiving the Court's decision or order, except as provided in Subparagraph c,

below.

c.     If any Party appeals the District Court's decision, Defendant shall pay all

accrued penalties determined to be owing, together with interest at the rate specified in 28

U.S.C. § 1961, within 15 Days of receiving the final appellate court decision.

60.     Obligations Prior to the Effective Date.  Upon the Effective Date, the stipulated

penalty provisions of this Decree shall be retroactively enforceable with regard to any and all

violations of Paragraph 6 of Appendix A that have occurred prior to the Effective Date, provided

that stipulated penalties that may have accrued prior to the Effective Date may not be collected

unless and until this Consent Decree is entered by the Court.

61.     Defendant shall pay stipulated penalties owing to the United States in the manner

set forth in Paragraph 8 and with the confirmation notices required by Paragraph 10, except that

the transmittal letter shall state that the payment is for stipulated penalties and shall state for

which violation(s) the penalties are being paid.  Defendant shall pay stipulated penalties owing to

the District in the manner set forth in Paragraph 11 and with the confirmation notice required by Paragraph 12 except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

62.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States or the District from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

63.     The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

64.     Non-Exclusivity of Remedy.  Stipulated penalties are not the United States' or the District's exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XIV (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States or the District for Defendant's violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of the CAA or the Jefferson County SIP, or a permit issued thereunder, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## XI.     FORCE MAJEURE

65.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that

Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

66.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree and for which Defendant intends to assert a claim for force majeure, as soon as practicable but no later than fifteen Days thereafter, Defendant shall provide in writing to EPA and the District an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare, or the environment.  Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

67.     If EPA, after a reasonable opportunity for review and comment by the District, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure

event will be extended by EPA, after a reasonable opportunity for review and comment by the District, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event. In such circumstances, the Parties shall make an appropriate modification of the deadline(s) pursuant to Section XIX (Modification) of this Consent Decree.

68.     If EPA, after a reasonable opportunity for review and comment by the District, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

69.     If Defendant elects to invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 65 and 66. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XII.     DISPUTE RESOLUTION

70.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute

under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States or the District to enforce any obligation of Defendant arising under this Decree.

71.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends DOJ and EPA a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 45 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

72.     Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending DOJ and EPA a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

73.     The United States will send Defendant its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position is binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

74.     Judicial Dispute Resolution.  Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States and the District a motion requesting judicial resolution of the dispute.  The motion must be filed within 45 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.  The motion may not raise any issue not raised in informal dispute resolution pursuant to Paragraph 71, unless the United States raises a new issue or law or fact in its Statement of Position.

75.     The United States and the District shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules or the Court.

76.     Standard of Review

        a.     Disputes Concerning Matters Accorded Record Review.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 72 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA or the District under this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States and District is arbitrary and capricious or otherwise not in accordance with law.

        b.     Other Disputes.  Except as otherwise provided in this Consent Decree, in

any other dispute brought under Paragraph 72, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

77.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 59. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section X (Stipulated Penalties).

## XIII.   INFORMATION COLLECTION AND RETENTION

78.    The United States, the District, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.    monitor the progress of activities required under this Consent Decree;

b.    verify any data or information submitted to the United States or the District in accordance with the terms of this Consent Decree;

c.    obtain samples;

d.    obtain documentary evidence, including photographs and similar data; and

e.    assess Defendant's compliance with this Consent Decree.

79.    Upon request, Defendant shall provide EPA and the District or their authorized representatives splits of any samples taken by Defendant. Upon request, EPA and the District shall provide Defendant splits of any samples taken by EPA or the District.

80.     Until three (3) years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that directly relate to Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or the District, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

81.     Defendant may assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2 and District Regulation 1.08, *Administrative Procedures*.

82.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the District pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIV.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

83.     This Consent Decree resolves all civil claims of the United States and the District for the violations alleged in the Complaint filed in this action through the Date of Lodging. This Consent Decree also resolves all civil claims regarding the Facility alleged in the NOV issued by

EPA to LG&E dated June 30, 2016.  This Consent Decree further resolves any other civil claims of the District that could have been brought arising from or related to the facts alleged in the Complaint through the Date of Lodging.

84.     The United States and the District reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States or the District to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 83.  The United States and the District further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

85.      In any subsequent administrative or judicial proceeding initiated by the United States or the District for injunctive relief, civil penalties, or other appropriate relief relating to the Facility or Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the District in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 83.

86.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations,

and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced by the United States or the District pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and the District do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, or with any other provisions of federal, State, or local laws, regulations, or permits.

87.     This Consent Decree does not limit or affect the rights of Defendant or of the United States or the District against any third parties not party to this Consent Decree, nor does it limit the rights of third parties not party to this Consent Decree, against Defendant, except as otherwise provided by law.

88.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XV.     COSTS

89.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the District shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant. The United States and the District shall be entitled to collect such costs incurred in any action necessary to collect any stipulated penalties due but not paid by Defendant only if the United States and the District prevail in such action.

## XVI.     NOTICES

90.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and sent by mail or email, with a preference for email, addressed as follows:

| As to DOJ by email (preferred): | eescdcopy.enrd@usdoj.gov |
| | Re: DJ # 90-5-2-1-11597 |

| As to DOJ by mail: | EES Case Management Unit |
| | Environment and Natural Resources Division |
| | U.S. Department of Justice |
| | P.O. Box 7611 |
| | Washington, D.C. 20044-7611 |
| | Re: DJ # 90-5-2-1-11597 |

| As to EPA by email: | Lloyd.David@epa.gov |

| As to EPA by mail: | Chief |
| | Air Enforcement Branch |
| | U.S. Environmental Protection Agency, Region 4 |
| | Sam Nunn Atlanta Federal Center |
| | 61 Forsyth St. SW |
| | Atlanta, GA 30303-8960 |

| As to the District by mail: | Executive Director |
| | Louisville Metro Air Pollution Control District |
| | 701 W. Ormsby Avenue, Suite 303 |
| | Louisville, KY 40203 |

| As to Defendant by mail: | General Counsel |
| | LG&E and KU Energy |
| | 220 West Main Street |
| | Louisville, KY 40202 |

| As to Defendant by email: | greg.cornett@lge-ku.com |

91.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

92.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVII.  EFFECTIVE DATE

93.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted,

whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant hereby agrees that it shall be bound to perform duties, limited under this Consent Decree to requirements in Appendix A, Paragraph 6, scheduled to occur prior to the Effective Date. In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVIII. RETENTION OF JURISDICTION

94.       The Court shall retain jurisdiction over this case after the Date of Entry until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XII (Dispute Resolution) and XIX (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XIX.   MODIFICATION

95.       The terms of this Consent Decree, including Appendix A, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

96.       Any disputes concerning modification of this Decree shall be resolved pursuant to Section XII (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 76, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XX.   TERMINATION

97.       After Defendant has:

   a.       completed the requirements of Section V (Compliance Requirements);

b.  maintained continuous satisfactory compliance with this Consent Decree for a period of at least 30 months;

c.  achieved satisfactory completion of the SEP consistent with Section VIII (Supplemental Environmental Project) and Appendix A;

d.  obtained a final Title V permit as required in Section VI (Permits); and

e.  paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree,

Defendant may serve upon the United States and the District a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

98.  Following receipt by the United States and the District of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States after consultation with the District agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

99.  If the United States, after consultation with the District, does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section XII. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 90 Days after service of its Request for Termination.

## XXI.  PUBLIC PARTICIPATION

100.  This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States

reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XXII. SIGNATORIES/SERVICE

101. Each undersigned representative of Defendant, the District, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice identified on the DOJ signature page below, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

102. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXIII. INTEGRATION

103.     This Consent Decree, including the attached Appendix A, constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein, including the term sheet agreed to by the Parties.  Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXIV. FINAL JUDGMENT

104.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the District, and Defendant.

## XXV.  HEADINGS

105.     Headings to the Sections and sub-Sections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

## XXVI. 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

106.     For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(b)(2), performance of Section II (Applicability), Paragraph 4; performance of Section V (Compliance Requirements), Paragraphs 13-22; Section VI (Permits), Paragraphs 23-27; Section IX (Reporting Requirements), Paragraphs 41-46  (except with respect to the payment of stipulated

penalties and SEP requirements); and Section XIII (Information Collection and Retention),

Paragraphs 78-80, is restitution, remediation, or required to come into compliance with law.

## XXVII.    APPENDIX

107.    The following Appendices are attached to and part of this Consent Decree:

"Appendix A" relates to the e-PTO Diesel Supplemental Environmental Project.

February 23, 2022

**Charles R. Simpson III, Senior Judge**
**United States District Court**

40

FOR THE UNITED STATES OF AMERICA:


TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

_____

November 29, 2021
Date

GABRIEL M. ALLEN
STEFAN J. BACHMAN
RICHARD S. GREENE IV
SHEILA McANANEY
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC  20044-7611


Signature Page for
*United States, et al. v. Louisville Gas and Electric Co.*

FOR THE U.S. ENVIRONMENTAL PROTECTION
AGENCY:

LEIF
PALMER

Digitally signed by LEIF
PALMER
Date: 2021.11.18
17:44:07 -05'00'

_____

LEIF PALMER
Regional Counsel
U.S. Environmental Protection Agency, Region IV

MARIROSE
PRATT

Digitally signed by
MARIROSE PRATT
Date: 2021.11.15
12:46:50 -05'00'

_____

MARIROSE PRATT
Associate Regional Counsel
U.S. Environmental Protection Agency, Region IV
Office of Regional Counsel

FOR THE LOUISVILLE METRO AIR POLLUTION
CONTROL DISTRICT:


RACHAEL HAMILTON
Director
Louisville Metro Air Pollution Control District
701 W. Ormsby Avenue, Suite 303
Louisville, KY 40203


STACY FRITZE DOTT
Assistant County Attorney
Office of Michael J. O'Connell
Jefferson County Attorney
200 S. Fifth Street, Suite 300N
Louisville, KY 40202

Signature Page for
*United States, et al. v. Louisville Gas and Electric Co.*

FOR DEFENDANT LOUISVILLE GAS AND ELECTRIC
COMPANY:

9/2/2021
Date

STEVEN TURNER
Vice President, Power Production
LG&E and KU Energy

# APPENDIX A

## e-PTO DIESEL SUPPLEMENTAL ENVIRONMENTAL PROJECT

1.      In accordance with Section VIII of this Consent Decree, Defendant shall replace ten heavy duty diesel bucket trucks in its service fleet that operates within its greater Louisville, Kentucky service area with ten qualifying e-PTO equipped bucket trucks.  The Parties expect this Project will reduce emissions of $NO_x$, sulfur dioxides, and particulate matter in the area impacted by the Facility's alleged excess SAM emissions by substantially reducing and minimizing engine idling of the e-PTO equipped bucket trucks during operation of the bucket lift and associated activities.

2.      For purposes of this Appendix, a "qualifying e-PTO equipped bucket truck" shall mean a vehicle:

      a.      That is 2021 engine model year or newer;

      b.      That has an M2-106 AN55EO or M2-106 TA50MH engine type;

      c.      That Defendant leases for a term of at least seven years;

      d.      That Defendant operates for the purpose of electric distribution and transmission line maintenance and construction activities;

      e.      That uses e-PTO technology to minimize idling of its engine during operation of its hydraulic bucket lift and associated equipment; and

      f.      That Defendant assigns to its Auburndale Service Center.

3.  Defendant shall install at least one 15-amp charging station dedicated to the ten qualifying e-PTO equipped bucket trucks at its Auburndale Service Center.

Appendix A – e-PTO Diesel SEP

4. Defendant has selected the newest generation of Altec Inc.'s Jobsite Energy Management System (JEMS LE) as the e-PTO technology that it intends to operate on the ten qualifying e-PTO equipped bucket trucks.

5. Defendant shall ensure that relevant employees, staff, and contractors will be trained on use of the qualifying e-PTO equipped bucket trucks.

6. Schedule. Defendant shall complete the e-PTO Diesel SEP on the following schedule:

    a.    Place orders for six new qualifying e-PTO equipped bucket trucks by no later than April 1, 2022, with a requested delivery date of no later than December 31, 2023;

    b.    Place orders for four new qualifying e-PTO equipped bucket trucks by no later than April 1, 2023, with a requested delivery date of no later than December 31, 2024;

    c.    Incorporate the e-PTO bucket trucks into its fleet upon delivery, consistent with completion of upfitting Defendant-specific communication equipment and logos, and any necessary pre-service training or quality control activities, which shall occur promptly after delivery;

    d.    Install at least one 15-amp charging station dedicated to the ten qualifying e-PTO equipped bucket trucks at its Auburndale Service Center prior to delivery of any qualifying e-PTO equipped bucket truck.

Appendix A – e-PTO Diesel SEP